Home Fire & Marine Insurance Company of California and Rhode Island Insurance Company of Providence, Rhode Island v. Ball, et al.

(Decided June 1, 1926.)

## Appeals from Harlan Circuit Court.

1. Insurance.—Insurer's agent may authorize another to sign agent's name to form on fire policy consenting to assignment of interest, or may ratify such act, and bind insurer.

2. Insurance—Acquiescence by Insurer in Assignment of Interest in Fire Policy by its Agent, Though Unauthorized, Prevents it from Claiming that it Did Not Consent to Assignment.—Insurer, knowing that its agent's name was signed to assignment of interest in fire policy, by acquiescing therein, though unauthorized, cannot claim that it did not consent to assignment.

3. Insurance—Destruction of Insured's Premises Within 60 Days After Removal from House by Insured Held Not to Avoid Policy, Though it was Not Then Used for a Dwelling.—Where fire policy required premises to be used only for dwelling, but permitted house to be vacant for 60 days without notice to insurer, fire occurring within less than 60 days after insured's removal from house, at time when it was not then used for dwelling, does not avoid policy.

4. Insurance—Storing of Soda Fountain Equipment in Insured House, with Consent of Insurer's Agent, Held Not to Increase Hazard, so as to Avoid Policy (Ky. Stats., sections 762a-18, 762a-19, 762b-29).—Storing in insured house of soda fountain equipment, after notice to insurer's agent thereof, and with his consent, held not to have increased hazard, so as to aoid policy, notwithstanding Ky. Stats., section 762a-18, 762a-19, 762b-29, prohibiting agreement not expressed in policy, or rebating and discrimination in rates.

5. Evidence—Court Takes Judicial Notice that Insurance Rates Within City Limits can be Changed Only by Rating Bureau, with the Approval of Auditor.—Court takes judicial notice that insur-

ance rates within corporate limits of city may be changed only by rating bureau, with approval of auditor, after consideration of changed conditions.

6.   Insurance—Finding that Insured Notified Insurer of Intention to Store Soda Fountain Equipment in Insured Residence, and was Advised that it Would Not Affect Policy, Held Not Against Evidence.—Finding that insured notified insurer of intention to move soda fountain equipment in insured residence, and was advised that this would not affect policy, held not flagrantly against evidence.

HITE H. HUFFAKER and LOW & BRYANT for appellants.

CHARLES B. SPICER and BOYCE WATKINS for appellees.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE— Affirming.

On November 17, 1923, appellees, S. M. Ball and J. D. Hughes, purchased from D. A. Clotfelter a one and one-half story frame dwelling house located in the city of Harlan, Kentucky. There was then in force covering the house a policy of fire insurance to the amount of $2,000.00, which appellant, Rhode Island Insurance Company, had issued to Clotfelter on November 6, 1923. When he conveyed the house and lot to appellees Clotfelter also assigned to them the insurance policy by signing the printed form for that purpose appended to the policy. Cumberland Insurance Agency, of Harlan, Kentucky, was the agent of insurer at that place with authority to consent for insurer to the assignment of interest, and on that date the printed form on the policy whereby insurer consented to the assignment of interest was signed, "Cumberland Insurance Agency, agent, by G. H. Bingham."

On November 19, 1923, appellees procured $2,000.00 additional insurance on the dwelling house in question from appellant, Home Fire & Marine Insurance Company of California. On February 11, 1924, the house in question was partially destroyed by fire, and on February 23rd, following, a second fire occurred which totally destroyed it. The two insurance companies disavowed liability under the policies, and appellees instituted these two actions to recover thereunder. The actions were heard and tried together by consent, and the jury returned a verdict in favor of appellees for the full amount of the two policies. The insurance companies

have appealed. The two appeals have been prosecuted separately, but will be considered together and disposed of in one opinion.

For appellant, Rhode Island Insurance Company, it is contended that its consent was never given to the assignment by D. A. Clotfelter to appellees, Ball and Hughes. It contends that G. H. Bingham was not its agent and had no authority to consent for it to the assignment of interest. It admits that Cumberland Insurance Agency was its agent and had authority from it to so consent, but insists that such authority was nondelegable by its agent. The written consent to assignment appended to the policy does not make it appear that G. H. Bingham undertook to bind the insurer by consenting, but that its agent, Cumberland Insurance Agency, undertook to do so. Because Bingham appears to have signed the agent's name is not evidence that the agent did not for the insurer consent to the assignment of interest. Insurer's agent could authorize Bingham to sign its (the agent's) name to the printed form on the policy consenting to the assignment of interest or could ratify such an act when done by Bingham and bind the insurer. That Bingham had signed the name of insurer's agent to the consent to assignment of interest was reported to the agent immediately, as appears from the testimony herein, and subsequently but before the fire, upon a change of agents and checking up of the business of the agency by a general agent of the insurer that fact was reported to him. Under those circumstances, if the consent to assignment as made was unauthorized, by acquiescing in it and failing to act when notice of what had been done was brought home to it, insurer will not be heard to say that it did not consent to the assignment of interest from Clotfelter to appellees.

For appellants it is insisted that each of the insurance companies insured appellees against loss by fire to the house described while "occupied and to be occupied only for dwelling purposes," and that before the fire appellees had ceased to use the building for dwelling purposes and had put it to other uses which avoided the policies. The narrow construction that appellants would have us place upon the quoted portion of the two insurance policies, that is, that it was a warranty that the house in question would be used as a dwelling house

throughout the full term of the policy and for no other
purpose, can not be consented to in view of other pro-
visions of the insurance contract. That language is
found in the portion of each of the contracts which is
devoted to a description of the property insured. Under
the terms of each policy the insurer insured appellees
against loss by fire to an amount not exceeding $2,000.00
"to the following described property." The portion of
the policy above quoted is found then in the immediately
following portion of the policies descriptive of the prop-
erty insured.  Subsequent clauses of each policy ex-
pressly granted permission for the house insured to be
vacant for a period of sixty days and unoccupied for a
period of six months without notice to or consent upon
the part of insurer.  Extension of those respective
periods of vacancy or unoccupancy might be obtained
upon application.

The evidence herein discloses that D. A. Clotfelter,
who resided in the house in question when both policies
were issued, continued to reside there until in January,
1924. The fire occurred within less than sixty days
thereafter.  If, after his removal and until the fire, the
house insured was not used for dwelling purposes, as
appellants insist, that fact can play no part, since the
fire occurred in less than sixty days thereafter, and be-
cause the policies expressly authorized a sixty-day
period during which it need not be used for dwelling
purposes.

It is insisted for both appellants that appellees in-
creased the hazard and thereby avoided the policies
under the following provision found in each of them:
"This policy, unless otherwise provided by agreement
endorsed hereon or added hereto, shall be void  . . .
if the hazard be increased by any means within the con-
trol or knowledge of the insured." To sustain that con-
tention appellants rely upon the following facts appear-
ing in the record: After Clolfelter, who continued to oc-
cupy the house in question from the time he sold it to ap-
pellees in November, 1923, until early in January, 1924,
moved out, appellee, J. D. Hughes, one of the joint own-
ers, placed in the house in question a soda fountain and
a lot of glass and silverware used in connection with it,
a number of tables and chairs, an electric piano, an ice-
box and other things which had been used at a soft drink
establishment which he had purchased.  The articles

mentioned were merely placed in the dwelling house. No attempt was made to operate the soda fountain or to set it and the other equipment up for operation there. Possession of the building which appellee had rented in which he intended to set up and operate the soda fountain could not be obtained immediately, and possession of the building from which he moved these articles had to be given. Hence the necessity for placing them somewhere until possession of the building in which he intended to operate the soda fountain could be obtained. It is insisted that neither insurance company ever had notice that those articles had been placed in the building insured; and that their presence materially increased the hazard and therefore under the terms of the policies rendered them void. The testimony for appellees tended to establish that after Hughes purchased the articles named and before he moved them to the house insured, he notified the local agent of each of the insurance companies and was advised that he might store those things in the insured house without affecting the policies. No rider attached to either of the policies or endorsement on either of them authorized insured to store the articles mentioned in the insured house. It is earnestly insisted for appellants that even if it be conceded to be true that, as appellees testified, the local agents of the insurers were notified and consented that the property be stored in the insured house, that would not be sufficient to save the contracts of insurance.

Section 762a-18, Kentucky Statutes, provides:

"No insurance company nor any agent thereof shall make any contract or agreement with reference to any insurance other than is plainly expressed in the policy."

Section 762a-19, and section 762b-29, forbid rebating and discrimination in rates and premiums. Appellants insist that by placing the soda fountain and equipment mentioned in the insured building appellees increased the hazard; and that under section 752a-18, *supra,* if the agents for insurers or insurers themselves had undertaken to have the insurance contracts continue to protect the building with the increased hazard and consequent increase of rate they could have done so effectively only in a writing attached to and made a part of the policy.

They further insist that any attempt upon their part to insure the house in question at the rate fixed when the insurance contracts were issued, after the hazard was increased by moving the articles mentioned into the insured house, would have been in violation of the other two sections of the statutes mentioned forbidding rebates and discrimination in insurance rates.

The chief difficulty we have in sustaining appellants' contentions in these particulars lies in placing the same value on the evidence in the record with reference thereto that appellants have. It is true that a witness for appellants, who appears to be an agent for one of the insurers, testified that the moving of the articles mentioned into the house insured increased the hazard and automatically raised the insurance rate for that house. All of that testimony, however, was admitted over the objection and exception of appellees. The house in question appears to be located within the corporate limits of the city of Harlan, Kentucky. Insurance rates on buildings located within the corporate limits of the municipalities of our Commonwealth are fixed under our laws relating to the question by a rating bureau and with the approval of the auditor of Kentucky. Rates on buildings do not automatically change. A change in the insurance rate on buildings is made only after an examination, survey and inspection by representatives of the rating bureau. Either insurer or insured may at any time make application for a reinspection and rerating. A change of surroundings and conditions does not automatically change the insurance rate upon a given building. The rate may be changed only by the rating bureau after an inspection and consideration of the changed conditions have been taken into account by it in passing upon the question. These facts, of which this court takes judicial notice, must be taken into account in connection with the three sections of the statutes, *supra*. If, in accord with appellants' contention, every change of conditions and surroundings, which upon consideration by the rating bureau resulted in a change of rates should be held automatically to have cancelled the insurance policies thereby affected from the date of such change, no one insured could have much faith in the protection offered by insurance policies. The business, extensive and important as it is, could hardly survive the ensuing lack of confidence.

In view of the method of determining and fixing insurance rates upon buildings within incorporated cities under which we operate, a common sense view must be taken of the question of increase of hazard brought about by the acts of the insured which may or may not be held to increase the rate of insurance upon consideration by the rating bureau, and all of these things must be taken into account in considering the stipulation of insurance policies that the policy shall be void if the hazard be increased by any means within the control or knowledge of the insured. None of the articles moved into the insured house were inflammable or could be considered more hazardous from the standpoint of fire risk than ordinary household furniture. The soda fountain, the silver, the glassware and the machinery and equipment used in connection with the soda fountain in carbonating the beverages were not only noninflammable but noncombustible. Such portion of these articles moved into the insured house as were combustible were no more so than the ordinary articles of household and kitchen furniture; and, in fact, consisted largely of the same things, that is, tables, chairs, a piano, an icebox and other similar articles. How then can it be said that their presence in the house increased the hazard?

It is true that if insured had moved this property into the insured building without the knowledge of the insurers appellants would be in position to insist upon that as a defense herein. When, however, appellee gave appellants notice of his intention to place the property in the insured house he gave them every opportunity to protect themselves. If they did not desire to carry the risk longer they had full authority and opportunity to cancel and surrender the policies. If they desired to carry the risk longer but to have the rating bureau take the changed conditions into account and determine what change, if any, should be made in the rate, they had full authority to have that done, and unless the insured would then pay the increased rate, if one be fixed, could protect themselves by cancelling the policies.

Appellants earnestly contend that the finding of the jury that appellees notified the agents of appellants of their intention to move the soda fountain and other property into the insured building is flagrantly against the evidence. We can not agree with them. Notice of that fact given to appellants' resident agents, conceded to

have had authority to issue and deliver policies, certainly would have been sufficient. Appellee, Hughes, testified positively that he notified the resident agent of both companies after he purchased the property and before he moved it into the insured house that he intended to do so, and was assured by them that he might do so without affecting the validity of his insurance contracts. Between the date these policies were issued and the date of the fire both appellant companies changed their resident agents at Harlan, Kentucky, and neither of the former agents were introduced by appellants as witnesses herein to contradict the testimony of appelllee, Hughes. The soda fountain and equipment were purchased by Hughes on December 17th. Some testimony found in the record tends to establish that W. F. Wright, who, under the same name, Cumberland Insurance Agency, was the agent for appellant, Rhode Island Insurance Company, left Harlan, Kentucky, before that date. Other testimony, however, tended to establish that he did not leave Harlan until December 28th. A witness for appellant, Home Fire and Marine Insurance Company of California, testified that on December 5, 1923, the Harlan agency of that company was discontinued and from that date until after the fire it had no resident agent at Harlan to whom notice of his intention to move the soda fountain and other property into the insured building could have been given and from whom permission to do so could have been obtained. However, the cross-examination of that witness discloses that the date, December 5, 1923, was fixed by him as the one on which the agency was cancelled merely because it appeared to be one of the dates on which that witness for his company was in Harlan, Kentucky, and he admitted that he made other visits to that town on other occasions in December and January. Other evidence in the record tended to establish that the agency was not cancelled until later and after appellee, Hughes, had opportunity to notify the agent of his intention to move the property into the insured building. Hence, it can not be held that the verdict, finding that appellee notified appellants and were advised that to place the property in question in the insured building would not affect the policies, is flagrantly against the evidence.

For the reasons indicated we have been unable to reach the conclusion that the hazard was increased by

any means within the control or knowledge of appellees, the insured, within the contemplation of the terms of the insurance policies. Under the facts of this case the real issue was whether or not appellees notified appellants that they intended to place the articles in question in the insured house. That question was fairly submitted to the jury by the instructions given. The evidence sustains the verdict returned. No error to the prejudice of appellants appears. The judgment must, therefore, be affirmed.

Judgment affirmed.